IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BART STADNICKI, Derivatively on Behalf of Nominal Defendant LENDINGCLUB CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RENAUD LAPLANCHE, CARRIE L. DOLAN, SCOTT SANBORN, DANIEL T. CIPORIN, JEFFREY CROWE, REBECCA LYNN, JOHN J. MACK, MARY MEEKER, JOHN C. MORRIS, LAWRENCE H. SUMMERS, and SIMON WILLIAMS,<br><br>　　　　Defendants,<br><br>and,<br><br>LENDINGCLUB CORPORATION, a Delaware corporation,<br><br>　　　　Nominal Defendant. | No. C 16-03072 WHA<br><br>**ORDER RE MOTION TO INTERVENE AND MOTION TO VOLUNTARILY DISMISS** |

**INTRODUCTION**

In this shareholder derivative action, a shareholder moves to intervene. In addition, plaintiff moves to voluntarily dismiss the instant action. For the reasons stated below, the motion to intervene is **DENIED**. Plaintiff's motion to voluntarily dismiss is **GRANTED**.

**STATEMENT**

The relevant facts are set forth in a prior order (*see* Dkt. No. 29). The facts underlying this motion can be summarized briefly. In June 2016, plaintiff Bart Stadnicki filed this

derivative action on behalf of nominal defendant LendingClub Corporation against various director defendants. Plaintiff alleges defendants violated Section 14(a) of the Securities Exchange Act of 1934 and other duties. On August 11, 2016, plaintiff filed a notice of voluntary dismissal under FRCP 41(a). The case was subsequently closed on August 16, and there was no further activity in the *Stadnicki* action (Dkt. Nos. 1, 26).

In December 2016, Chaile Steinberg filed a derivative action in Delaware Chancery Court on behalf of LendingClub. That action has since been consolidated with another derivative action in Delaware as *In re LendingClub Corp. Derivative Litigation*, Consolidated C.A. No. 12984–CB ("the Delaware action"). The Delaware action, which alleges breaches of duties of loyalty and good faith, is based on the same misconduct alleged in the *Stadnicki* action. It, however, does not allege a Section 14(a) claim. The action is still pending in Delaware (Dkt. Nos. 48 at 2, 83-4).

In November 2017, our proposed intervenor, Jeremy Sawyer, filed his own separate derivative action, *Sawyer v. Sanborn, et al.*, No. C 17–06447 WHA (N.D. Cal.). As in the instant action, Sawyer's action asserted a Section 14(a) violation claim against director defendants, with LendingClub as a nominal defendant. In February 2018, Sawyer agreed to a temporary stay of the case and set a further conference for July 19. On May 15, the parties in the *Sawyer* action participated in a settlement conference before Judge Joe Spero but did not reach a settlement (Case No. 17–06447, Dkt. Nos. 1, 32, 69).[1]

Nearly two years after the instant action "closed" and six months after filing his own separate derivative action, Sawyer now moves to intervene. Sawyer argues, and the Court agrees, that the instant action was improperly dismissed and thus remains live. Voluntarily dismissals of derivative actions under FRCP 41(a)(1) are subject to FRCP 23.1(c), which requires court approval. Moreover, "[n]otice of a . . . voluntary dismissal . . . must be given to shareholders or members in the manner that the court orders." FRCP 23.1(c). The Court agrees

---

[1] Sawyer requests judicial notice of the complaint filed in *Sawyer v. Sanborn, et al.*, No. C 17–06447 WHA (N.D. Cal. Nov. 6, 2017). Defendants do not oppose. A court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Sawyer's request for judicial notice is **GRANTED**.

that plaintiff Stadnicki's mere notice of voluntary dismissal was therefore ineffective, as it had not sought court approval, nor did plaintiff issue a court-approved notice to shareholders of the pending dismissal at that time.

Following the motion hearing, the instant action was therefore reopened. Pursuant to an order following the hearing, defendants in the *Sawyer* action now move to dismiss Sawyer's derivative action based on statute of limitations, and plaintiff Stadnicki now moves to voluntarily dismiss the instant action under FRCP 23.1(c) (Dkt. Nos. 59, 60, 73; Case No. 17–06447, Dkt. No. 71).[2]

This order, which addresses proposed intervenor Sawyer's motion to intervene and plaintiff Stadnicki's motion for voluntary dismissal, follows full briefing and multiple oral arguments.

**ANALYSIS**

**1. MOTION TO INTERVENE.**

Faced with a mounting statute of limitations defense in his own action, Sawyer now moves to intervene in the instant action on the basis that plaintiff Stadnicki "secured an advantage" by filing within the statute of limitations (*see* Dkt. No. 39 at 7). Under these unusual circumstances, however, Sawyer has failed to show it is entitled to intervene.

**A. Mandatory Intervention.**

To intervene as a matter of right under FRCP 24(a)(2), a proposed intervenor must establish four elements: "(1) that the prospective intervenor's motion is 'timely'; (2) that the would-be intervenor has 'a "significantly protectable" interest relating to . . . the subject of the action'; (3) that the intervenor is 'so situated that the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect that interest'; and (4) that such interest is 'inadequately represented by the parties to the action.' " *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)).

---

[2] A concurrently filed order addresses the motion to dismiss based on the statute of limitations in *Sawyer v. Sanborn, et al.*, No. C 17–06447 WHA (N.D. Cal.).

3

Defendants argue that (1) Sawyer's motion to intervene is untimely and (2) the Delaware action adequately protects shareholders (Dkt. No. 48 at 3–8). This order agrees.

### *(1)* *Timeliness.*

"Timeliness is the threshold requirement for intervention." *United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990). "Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

"Timeliness is determined by the totality of the circumstances facing would-be intervenors" based on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith*, 830 F.3d at 854 (quoting *Alisal Water Corp.*, 370 F.3d at 919).

*First*, although it seems as if this litigation is just getting started in the instant action, the truth is that the proceedings are at a very advanced stage. Since plaintiff Stadnicki "dismissed" the instant action almost two years ago, multiple related actions have marched forward. This Court has seen the related class action *In re LendingClub Securities Litigation*, No. C 16–02627 WHA (N.D. Cal.) (which involved both federal and state class actions), through from start to finish — and only recently granted final approval of settlement after rigorous litigation (*see* Case No. C 16–02627, Dkt. No. 383). Moreover, several derivative actions — based on the same misconduct alleged here — were filed in Delaware and are currently underway. This includes *Steinberg, et al. v. Morris, et al.*, No. 12984–CB (Dec. 14, 2016) and *Fink, et al. v. Laplance, et al.*, No. 2017–0600–AGB (Aug. 18, 2017), both filed in the Delaware Court of Chancery and now consolidated as *In re LendingClub Corporation Derivative Litigation*, No. CA–12984 (Dkt. No. 75 at 2). The train has left the station. This factor therefore weighs against intervention.

*Second*, the prejudice prong is overall neutral towards the original parties. "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented — and not from the fact that including another party in the case

4

might make resolution more 'difficult.' " *Smith*, 830 F.3d at 857 (quoting *State of Or.*, 745 F.2d at 552–53). "[P]rejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.' " *Smith*, 830 F.3d at 857 (quoting *State of Or.*, 745 F.2d at 552).

Here, Sawyer arguably should have known of the purported dismissal since November 2016, as LendingClub stockholders were notified of Stadnicki's voluntary dismissal on November 9, 2016, in the Company's Form 10-Q (*see* Dkt. No. 75 at 1).[3] At that point, Sawyer could have either brought his own derivative action within the statute of limitations or implemented the same strategy he employs in the present action, *i.e.*, seek to reopen the instant case and move to intervene.

And to repeat, the same subject matter in the instant action is currently being litigated in the Delaware action (and has been for almost the past two years). Had Sawyer sought to intervene at an earlier time, the various actions filed on opposite coasts could have been more readily coordinated in addressing the claims — which are all based on the same alleged misconduct — asserted against defendants. At this point, to intervene now would thus cause slight legal prejudice to defendants. Moreover, intervention at this stage could even cause prejudice to LendingClub itself. As counsel for LendingClub stated at the motion hearing, having to litigate "in the wrong forum" (*i.e.*, the present forum) on top of the Delaware forum amounts to a prejudicial drain on its finances as well as its ability to control its assets (Dkt. No. 86 at 34:24–35:3, 37:21–24). That being said, this order recognizes that the prejudice to defendants is at most slight.

On the other hand, the shareholders may be slightly, if at all, prejudiced if intervention is denied. While the Delaware action pursues the same damages based on the same alleged misconduct Sawyer seeks here, it does so on different legal theories involving different standards. Any potential prejudice that may arise from forgoing a Section 14(a) claim, however, is speculative. Thus taken altogether, this factor is neutral towards intervention.

---

[3] Plaintiff states that he was unaware of the November 9, 2016 Form 10-Q and its contents thereof (Dkt. No. 82-1at 2). This, however, is separate from whether he reasonably *should have known* of its contents at the time of the Form 10-Q's issuance.

5

*Third*, Sawyer's substantial delay in seeking intervention remains utterly unexplained. Courts "must bear in mind that 'any substantial lapse of time weighs heavily against intervention.'" *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (quoting *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996)). To repeat, almost two years have passed since the instant action was initially closed. Despite several pointed inquiries by the Court, Sawyer does not offer *any* reason for waiting almost two years after the fact to intervene. As such, Sawyer's unexplained substantial lapse in time weighs "heavily" against intervention.

Ultimately, despite the overall lack of prejudice to the original parties, given the late stage in the overall LendingClub litigation history and the unexplained substantial delay in seeking intervention, this order finds that the totality of the circumstances establishes that Sawyer's motion is untimely.

### *(2)    Adequacy of Representation.*

This order also finds that the ongoing Delaware derivative action — which alleges harm to LendingClub based on the same alleged misconduct involving Cirrix, Jeffries, and internal controls — provides adequate representation for LendingClub.

*In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003), is persuasive. There, the United States Court of Appeals for the Second Circuit upheld the denial of a shareholder's motion to intervene, noting that the shareholders and nominal defendants' interests were adequately protected by parallel state court proceedings. Specifically, the court stated that "there [was] no reason to believe that the shareholders' interests w[ould] not be adequately protected by the parallel state court proceedings simply because the plaintiffs in that action have chosen a slightly different strategy and have raised slightly different claims." *Id*. at 301.

So too here.

Sawyer makes much of the fact that the instant action maintains a Section 14(a) claim as opposed to the Delaware action, which asserts only common law claims requiring a different standard of proof (Dkt. No. 54 at 5). As such, according to Sawyer, denying intervention would be prejudicial to LendingClub.

Notably, however, plaintiffs in the Delaware action actively chose *not* to pursue a Section 14(a) claim in their derivative suits (*see* Dkt. No. 83-1). Specifically, counsel for the Delaware plaintiffs stated that "[a]fter receiving and evaluating books and records from LendingClub," they "elected, in consultation with [their] clients, exclusively to pursue state law claims in the Delaware Court of Chancery" (*ibid.*). That the Delaware plaintiffs decided to forgo the Section 14(a) claim is telling and further indicates that the strategic choices made in the Delaware action adequately represent LendingClub's interests.

Sawyer's reliance on *In re American Capital Agency Corporation Stockholder Derivative Litigation*, No. C 16–3215 TDC, 2017 WL 3311209 (D. Md. Aug. 2, 2017) (Judge Theodore D. Chuang), is unavailing. There, a district court distinguished between a Section 14(a) claim (over which federal courts have exclusive jurisdiction) and a related Delaware derivative action — which, unlike here, did not include a proxy-misrepresentation allegation arguably analogous to the Section 14(a) claim (*see* Dkt. No. 83-4) — in ruling on a motion to *stay*. *Id*. at *8. In that specific context, that district court had to determine whether the suits at issue were "parallel," *i.e.*, the state action was "an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Ibid*. (emphasis in original). Sawyer points to no authority stating that such a level of showing in the context of a motion to *intervene* is required in determining whether the Delaware action at issue here *adequately represents* the interests of LendingClub and its shareholders.

At bottom, this order finds that the Delaware action adequately represents LendingClub's interests. Any potential prejudice that Sawyer alleges would transpire from denial of intervention is at most speculative.

Because this order holds the instant motion untimely and the Delaware action as adequate representation of LendingClub's interests, Sawyer's motion to intervene as a matter of right is **DENIED**.

### B. Permissive Intervention.

"An applicant who seeks permissive intervention [under FRCP 24(b)(2)] must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the

7

main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention. *See Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir.1986).

"As with motions for intervention as of right, '[a] finding of untimeliness defeats a motion for permissive intervention.' " *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (quoting *United States v. State of Wash.*, 86 F.3d 1499, 1507 (9th Cir. 1996)). In determining timeliness under FRCP 24(b)(2), courts consider the same three factors (the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay) considered in determining timeliness under FRCP 24(a)(2). *Ibid*. (citation omitted). "In the context of permissive intervention, however, we analyze the timeliness element more strictly than we do with intervention as of right." *Ibid*.

Here, the above conclusion that Sawyer's motion to intervene as of right is untimely is controlling (and with even greater force) as to intervention by permission. Accordingly, Sawyer's motion to intervene by permission is **DENIED**.

### 2. MOTION TO VOLUNTARILY DISMISS.

Plaintiff Stadnicki moves to voluntarily dismiss the instant action without prejudice and without notice to LendingClub shareholders pursuant to FRCP 23.1(c) (Dkt. No. 73).

FRCP 23.1(c) states that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal or compromise must be given to shareholders or members in the manner that the court orders." One relevant reason for the notice requirement is "to prevent 'dismissals which are due primarily if not entirely to the named plaintiff's change in heart about prosecuting the action.' " *Bushansky v. Armacost*, No. C 12–01597 JST, 2014 WL 2905143, at *1 (N.D. Cal. June 25, 2014) (citing *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 269 (3d Cir. 1978)).

"While the language of Rule 23.1(c) suggests that notice is mandatory, courts have exercised their discretion to allow parties to dispense with the notice requirement in at least three

8

circumstances: [1] when a claim is dismissed after litigation on the merits, [2] when a claim is dismissed because it has become moot, and [3] when absent class members will not be prejudiced by the lack of notice, and the expense of giving notice would be unduly burdensome to the named plaintiff." *Id*. at *2 (citations omitted).

Plaintiff Stadnicki argues that notice is not required for dismissal here because of the Company's Form 10-Q filed on November 9, 2016, which effectively gave notice to stockholders of the action's dismissal (Dkt. No. 75 at 6). This order agrees. Under these circumstances, this order finds that LendingClub and its shareholders will not be prejudiced by the lack of a specifically court-approved notice at this stage in the proceedings. Plaintiff is not required to issue notice because the Delaware action adequately protects those who otherwise might have intervened or sued on their own. Accordingly, plaintiff's motion to voluntarily dismiss without prejudice and without notice is **GRANTED**.

## CONCLUSION

For the foregoing reasons, proposed intervenor Sawyer's motion to intervene is **DENIED**. Plaintiff Stadnicki's motion to voluntarily dismiss is **GRANTED**. The Clerk **SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: August 29, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE